**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| DUANE O'MALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-CV-8200 |
| | ) | |
| DAVID NOVOSELSKY, | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| Defendant. | ) | Magistrate Judge Susan E. Cox |
| _____ | ) | |
| JAMES AYRES, | ) | |
| | ) | |
| Plaintiff, | ) | (consolidated) |
| | ) | |
| v. | ) | No. 11-CV-110 |
| | ) | |
| DAVID NOVOSELSKY, | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISQUALIFY

Defendant David Novoselsky, by his attorneys Michael J. Flaherty, C. Corey S. Berman and the law firm of Flaherty & Youngerman, P.C., hereby moves this Honorable Court to disqualify attorneys Joseph T. Gentleman and Donald L. Johnson as counsel for Plaintiffs Duane O'Malley and James Ayres. In support hereof, Defendant states as follows:

1.     Pursuant to Executive Committee Order dated February 10, 2001 *(Doc. 12)*, this Court is handling the above two related and irreconcilably conflicted cases. In *O'Malley v. Novoselsky, No. 10 CV 8200*, Plaintiff Duane O'Malley ("O'Malley") falsely alleges that Defendant attorney David Novoselsky ("Novoselsky") kept O'Malley in the dark about legal work that Novoselsky's firm was or was not doing on O'Malley's files; that Novoselsky refused to provide O'Malley with work details; and that Novoselsky kept $161,000 in retained funds without doing work on O'Malley's files. O'Malley demands a return of all of the $161,000

supposedly being kept by Novoselsky, who O'Malley says did not provide him with legal services to justify his keeping those funds. O'Malley is represented by attorneys Joseph T. Gentleman ("Gentleman") and Donald L. Johnson ("Johnson"). A copy of the *O'Malley* Complaint is attached hereto as *Exhibit 1*.[1]

2.     In *Ayres v. Novoselsky, No. 11 CV 110*, Gentleman and Johnson represent O'Malley's current and former attorney, James Ayres ("Ayres"), who worked on all of O'Malley's files while he was employed at the Novoselsky firm. Ayres alleges the opposite facts in his Complaint: Ayres alleges that he is owed 33% referral fees on revenue earned from cases that he brought to the Novoselsky firm. Ayres alleges that he is owed 33% of the $161,000 in fees on the O'Malley files because of the $161,000 in fees that were earned on those files. Ayres should know the work was done – he performed (and was paid for) hundreds of hours of work on more than half a dozen of O'Malley's files. A copy of the *Ayres* Complaint is attached hereto as *Exhibit 2*.[2]

3.     Gentleman and Johnson were reckless with the Court in their pleadings. Gentleman and Johnson did not specifically mention O'Malley's name in the *Ayres* Complaint. The *Ayres* Complaint instead alludes to the O'Malley files by alleging that Ayres is owed 33% for fees on "Client J", who is alleged to have paid the Novoselsky firm $161,000. Gentleman

---

[1] Defendant has served a Rule 11 Motion for Sanctions on O'Malley's attorneys pursuant to the safe-harbor provisions of Fed. R. Civ. P. 11(c)(2). The documented facts show that O'Malley received consolidated billing statements from the Novoselsky firm; that attorneys at the Novoselsky firm performed hundreds of hours worth of work on O'Malley's files; and that in June 2010, O'Malley physically reviewed the billings at Novoselsky's offices and executed a new retainer agreement in which O'Malley stipulated and agreed to the correctness of the firm's billings. O'Malley's claim against Novoselsky is false and frivolous.

[2] Defendant has served a Rule 11 Motion for Sanctions on Ayres' attorneys pursuant to the safe-harbor provisions of Fed. R. Civ. P. 11(c)(2). The documented facts show that Ayres was paid over $122,000 in referral fee compensation, slightly more than the $121,000 that he claims he is owed. Ayres's claim against Novoselsky is false and frivolous.

and Johnson not coincidentally alleged in the *O'Malley* Complaint that the Novoselsky firm owes O'Malley $161,000 in unearned retainer fees.

4. Gentleman and Johnson's filings are irreconcilably conflicted. In *O'Malley*, Gentleman and Johnson allege that O'Malley is entitled to a return of $161,000 in retainer fees that were not earned. In *Ayres,* Gentleman and Johnson allege that Ayres is entitled to 33% of the $161,000 that the Novoselsky firm in fact earned on the O'Malley files.

5. Plaintiff's attorneys must be disqualified from either or both cases pursuant to LR 83.51.7 because of the transparent incompatibility of the respective plaintiffs' positions. Both O'Malley and Ayres cannot win – indeed, the clients are pitted against each other. Either the $161,000 was earned (which it was) and Ayres was entitled to 33% of the revenues (which he already received), or the money was not earned (meaning that Ayres would not be entitled to any portion of it and would have to disgorge the approximately $41,000 in O'Malley revenues that he received from the Novoselsky firm).

6. Inasmuch as Ayres did the work on O'Malley's files, billed hundreds of hours of time on the files, and was paid a percentage of the fees billed to O'Malley, Ayres knows that the Novoselsky firm earned its fees. Novoselsky has voluntarily produced to Gentleman four (4) bankers' boxes worth of documents generated on O'Malley's files containing approximately 10,000 pages, which documents also establish the extent of work that the Novoselsky firm, including Ayres, performed on the O'Malley matters.

7. Local Rule 83.51.7 provides as follows:

**LR83.51.7. Conflict of Interest: General Rule**

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after disclosure.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after disclosure.

(c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representation and the advantages and risks involved.

8.    The Committee Comments following LR 83.51.7 provide, in pertinent part, as follows:

*Conflicts in Litigation.*    Section (a) prohibits representation of opposing parties in litigation.    Simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by section (b) and (c).    *An impermissible conflict may exist by reason of . . . incompatibility in positions in relation to an opposing party . . .*

Committee Comments foll. LR 83.51.7 (emphasis added).    District courts "largely have embraced the language in the committee notes."    *Rudzinski v. Metropolitan Life Ins. Co., 2007 WL 3171338 (N.D. Ill. 2007).*

9.    The diametrically opposed pleadings on behalf of Gentleman's and Johnson's concurrent clients do more than simply frame inconsistent arguments that could be made in the alternative.    In order to prove O'Malley's claim that he is entitled to a return of the $161,000 in legal fees, Gentleman and Johnson will have to essentially establish that Ayres committed billing fraud by reporting in timesheet after timesheet that he performed work on O'Malley's files that Ayres did not perform.    *(See, e.g., Exhibit 3* (September 23, 2009 draft billing statement faxed by Ayres to O'Malley*))*.    While this is a most unlikely outcome because Ayres did, in fact, perform

4

substantial amounts of work on O'Malley's files while at the Novoselsky firm, it is nonetheless a position that Gentleman and Johnson will have to take against their client, Ayres. If Gentleman and Johnson were to succeed in proving that Ayres overbilled O'Malley, Ayres would be compelled to forfeit approximately $41,000 in unearned fees.

10.     If that were not enough of a conflict to warrant disqualification from representing both O'Malley and Ayres, Gentleman and Johnson must likewise disprove O'Malley's claim in order to prove Ayres' claim. In order to prove that Ayres is entitled to 33% of the $161,000 allegedly earned and retained by the Novoselsky firm on O'Malley's files (the defense to which is that Ayres has already been paid, in fact overpaid, on his referral compensation claim), Gentleman and Johnson must take a directly adverse position to their client, O'Malley. If Ayres was entitled to referral compensation for O'Malley's files as Ayres claims, then the Novoselsky firm had to have performed the work on O'Malley's files that entitled it to retain the fees supporting Ayres' claimed referral compensation. Thus, O'Malley must lose on his claim that the Novoselky firm did not perform legal services that would have allowed them to retain the alleged $161,000.

11.     Not only do Gentleman and Johnson have an irreconcilable conflict of interest, but the conflict of interests extends to Ayres. The pleadings put Ayres at issue against his current client, O'Malley.[3] Inasmuch as Ayres was the attorney who performed the legal services on O'Malley's files, Ayres would have to testify on his behalf in the *Ayres* case that his own work caused him to be entitled to his 33% fee. That testimony would be materially adverse to O'Malley's testimony, through which he ostensibly would be attempting to establish that Ayres

_____

[3] O'Malley alleges in his Complaint that he retained Ayres as his attorney after Ayres left the Novoselsky firm. *(Exhibit 2 at ¶ 15)*.

either did not perform the work, or that Ayres' work was incompetent, thus entitling O'Malley to a return of his money.

12.     Local Rule 83.51.7(b) and Illinois Rule of Professional Conduct 1.7(a) are substantially similar.  Both Rules provide that a lawyer may not represent a client if the representation of the client may be materially limited by the lawyer's own interests.  Although the Rules provide that the client may waive the conflict if the lawyer reasonably believes that the attorney-client relationship will not be affected, the materially conflicting and accusatory positions that Ayres and O'Malley will have to take against each other in these cases eliminates any reasonable belief that the attorney-client relationship will not be affected.  Ayres' conflict of interest caused by the irreconcilably opposed allegations in the two cases herein require Ayres to withdraw as O'Malley's attorney in all cases in which Ayres represents O'Malley.

13.     To say that Gentleman and Johnson have been cavalier with their federal court filings would significantly understate their recklessness.  Defendants have tendered Rule 11 sanctions pleadings to Plaintiffs' counsel on both cases.  The 21-day safe harbor period is currently running and will expire on March 14, 2011.  In the event that either Plaintiff chooses not to voluntarily dismiss his claims, Gentleman and Johnson should be disqualified from representing the Plaintiffs in either or both cases.

WHEREFORE, Defendant David Novoselsky prays that this Court disqualify Joseph T. Gentleman and Donald L. Johnson as counsel for Plaintiffs Duane O'Malley and James Ayres, and grant such other relief as this Court deems just and proper.

DAVID NOVOSELSKY

By:  \_\_\_/s/ C. Corey S. Berman_____
One of the attorneys for Defendant

Michael J. Flaherty, Esq. (ARDC #6187147)
C. Corey S. Berman, Esq. (ARDC #6203763)
Flaherty & Youngerman, P.C.
134 N. LaSalle Street, Suite 1600
Chicago, IL  60602
312-782-4700